**SHYAMASHREE SINHA, M.D., Appellant,**

v.

**UNIVERSITY OF KENTUCKY, Appellee.**

**No. 2008–CA–000311–MR.**

Court of Appeals of Kentucky.

Dec. 19, 2008.

Discretionary Review Denied by Supreme Court June 17, 2009.

Kent Masterson Brown, Lexington, KY, for appellant.

Stephen L. Barker, Joshua M. Salsburey, Lexington, KY, for Appellee.

Before LAMBERT and TAYLOR, Judges; GRAVES,[1] Senior Judge.

1. Senior Judge J. William Graves sitting as Special Judge by Assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

## OPINION

LAMBERT, Judge.

Shyamashree Sinha, M.D., appeals an order denying her attorneys fees, costs, and a *per diem* sum. After careful review, we affirm.

Shyamashree Sinha, M.D., (hereinafter Sinha), obtained her medical doctorate from the Calcutta National Medical College in Calcutta, India, in September 1996. On September 2, 2002, she began her residency training in the Department of Internal Medicine, College of Medicine, at the University of Kentucky. She continued residency training until March 31, 2006. Six weeks prior to graduation, Sinha was informed by Steven A. Haist, M.D., (hereinafter Haist), her Residency Director, that the Resident Evaluation Committee (REC) had determined to place her on a six-month probation. Sinha later determined that the REC had voted on February 9, 2006, for Haist to grade Sinha as unsatisfactory in his final evaluation and in any subsequent evaluations. According to Sinha, that determination was in actuality a termination. Sinha claims that the secret termination was never communicated to her, and thus that she was denied the opportunity to request and receive, under the University's administrative procedures, an evidentiary hearing on her termination before an impartial hearing committee.

Graduation from a residency program is not statutorily required in Kentucky, and Dr. Sinha had previously entered into an employment agreement with a rural health care clinic in Kentucky. Accordingly, Dr. Sinha elected to obtain her permanent medical license through the Kentucky Board of Medical Licensure (KBML) and begin practicing medicine pursuant to that employment agreement. Sinha thereby resigned her residency on April 1, 2006.

Unbeknownst to Sinha, Haist wrote a letter on May 3, 2006, to the KBML recommending that Sinha not be granted a license to practice medicine in Kentucky. On the basis of the letter, the KBML refused to grant Sinha a license to practice medicine, and Sinha could not fulfill her agreement to practice internal medicine at the rural health clinic in Berea. Without employment and having no legal status in the United States, Sinha's immigration status mandated that she return to India.

On January 3, 2007, Sinha requested in writing that the University of Kentucky make all her graduate medical education records and documents available to her for inspection and copying. Sinha believed she was making this request pursuant to the Open Records Act; however, her request did not state such. The request stated:

> I hereby request that you forward to me at the hereinabove address the full and complete records of any graduate medical education in the Internal Medicine Department at the University of Kentucky, including, but not limited to, copies of any and all evaluations, letters, correspondence, memoranda, and any and all *other communications directed to* parties within the University of Kentucky or outside of the University and to any and all third parties, including, but not limited to, the Kentucky Board of Medical Licensure, regarding my training, progress, proficiency, evaluations, probation, character or any other aspect of my tenure in the Internal Medicine Department of the University of Kentucky.

The request was sent to Deborah Aminoff, (hereinafter Aminoff), Director of Graduate Medical Education and was received on January 22, 2007.

According to Sinha, the University was required under Kentucky Revised Statutes

(KRS) 61.872(4) to notify her if Aminoff was not the proper custodian of the records, and they were otherwise required to communicate with her within three days of receipt of the requests as set forth in KRS 61.872(4)(5). Sinha waited for more than two months for the records and did not make any contact with the University to inquire about the records. On April 2, 2007, she filed the underlying civil action pursuant to the Kentucky Open Records Act.

On April 4, 2007, the University of Kentucky mailed Sinha some, but not all, of her requested records. Sinha did not receive a copy of the May 3, 2006, letter Haist had written to the KBML nor did she receive the minutes of the meeting of the REC from February 9, 2006. The University of Kentucky then filed an answer and a motion to dismiss Sinha's complaint arguing, among other things, that Sinha had not designated that her request was pursuant to the Open Records Act, that she had not contacted Aminoff to inquire about the records, and that the case was moot because all of Sinha's records were mailed to her on April 4, 2007.

The parties appeared before the Fayette Circuit Court on the Motion to Dismiss on May 18, 2007. The case was called, and the parties then agreed with the court that the University would provide the missing records. Both parties then agreed to pass the motion. On May 30, 2007, Sinha was permitted to inspect her records and found the May 3, 2006, letter from Haist to the KBML and the minutes of the REC meeting on February 9, 2006.

Sinha then sought reimbursement of her attorneys fees, costs, and a *per diem* sum pursuant to KRS 61.882(5), arguing that the University's conduct was wrongful and willful. Sinha sought $12,549.34 in costs and attorneys fees and a *per diem* sum of $3,225.00 based upon 129 days at $25.00 per day.

■ At the hearing on the motion, the University argued that their conduct was neither wrongful or willful, emphasizing that Sinha never contacted the University to inquire about her request and that had she done so, the records would have been sent sooner. The University also argued that the records were voluminous and had to be extensively reviewed and redacted to ensure no protected patient information was included in the copies, consistent with the Health Insurance Portability and Accountability Act (HIPAA).

Furthermore, the University provided affidavits of the records custodians, which indicated that Aminoff assumed Sinha's request was simply a routine request for student records rather than a request made pursuant to the Open Records Act. The University explained that Aminoff gathered Sinha's Graduate Medical Education (GME) file and sought assistance from Lindsey Sutton, Program Coordinator for the University's Internal Medicine Residency Program, who had access to both internal medicine (IM) residency files and meeting minutes of the REC. According to Sutton, the meeting minutes from the REC are the written record of the Committee actions regarding any number of issues and, consistent with their nature, are not maintained in individual IM residency files and are instead maintained in a separate file in Sutton's office. Sutton testified by affidavit that she neither read nor understood Sinha's request to seek or encompass Committee minutes.

The University also argued that when it sent Sinha's records on April 4, 2007, it was not aware of either the lawsuit filed on April 2, 2007, or of the existence of Haist's May 3, 2006, letter to the KBML. When it became aware of the May 3, 2006, letter to the KBML, it made it available to Sinha.

Sinha argued that the University's conduct was willful and that its motion to dismiss was frivolous, given that it knew it had withheld the records. Essentially, Sinha argued that because the court found the University's conduct to be wrongful, it must also be found willful. Sinha argued that the University deliberately withheld the records until after her allotted time to file an administrative appeal and that it was not her responsibility to contact the University regarding the Open Records request.

The trial court denied Sinha's KRS 61.882(5) motion, holding that, "[t]he Court hereby finds that while [the University's] handling of [Dr. Sinha's] January 3, 2007[,] request for records was wrongful, there is not a sufficient basis for the Court to find the University's conduct was willful under KRS 61.882(5)." On February 15, 2008, Sinha filed her notice of appeal to this Court.

■ KRS 61.882(5) provides:

[a]ny person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

Whether or not the University willfully withheld the records in the instant case was a factual finding for the trial court to make. That finding cannot be disturbed on appeal unless it was clearly erroneous. *See Bowling v. LFUCG*, 172 S.W.3d 333, 345 (Ky.2005). The question for this court, then, is whether the trial court's finding was supported by substantial evidence.

We hold that the trial court's decision was not clearly erroneous and was supported by substantial evidence. In order to show that the University's actions were willful, Sinha was required to show that the University acted in bad faith with an intent to violate the Open Records Act and without plausible explanation for the alleged errors. *See* KRS 61.882(5); *Bowling*, 172 S.W.3d at 343–345. The trial court below found that while the University improperly withheld the records, it did not do so with intent to violate the Act, and it had plausible explanation for its errors.

The evidence in this case consisted largely of testimony through conflicting affidavits. The trial court was in the position to judge the credibility of the various testimony and affidavits. We are not in a position to substitute our judgment for that of the trial court. Given the explanations found in the affidavits on record, we find that the trial court had substantial evidence to find that the University did not act willfully.

The records custodians testified that the REC minutes and Haist's letter were not items routinely kept in the IM files of each student, and the REC minutes were kept separately by the REC records custodian. Further, the custodians were not aware that Haist had written the letter until Sinha brought it to their attention, and she was then permitted to examine the letter and the minutes. This evidence was sufficient for the court to find that the University's conduct was not willful and that they

did not intentionally withhold records from Sinha. As such, the trial court's decision to deny the award of attorneys fees and costs was not clearly erroneous.

Given that the court must first determine that the University's actions were willful before it can award attorneys fees, costs, and any *per diem* sums, it is unnecessary for us to address the remainder of the parties' arguments concerning the standards to be utilized in establishing those costs and fees.

For the foregoing reasons, the decision of the Fayette Circuit Court is affirmed.

ALL CONCUR.