COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Appellant,

v.

LEXINGTON H–L SERVICES, INC. d/b/a Lexington Herald–Leader; William Estep; and the Courier–Journal, Inc., Appellees.

No. 2010–CA–002194–MR.

Court of Appeals of Kentucky.

Oct. 19, 2012.

D. Brent Irvin (argued), Mona Womack, Frankfort, KY, for Appellant.

Robert F. Houlihan, Jr., Kif H. Skidmore (argued), Lexington, KY, for Appellee Lexington H–L Services, INC. d/b/a Lexington Herald–Leader.

Jon L. Fleischaker (argued), Jeremy S. Rogers, Louisville, KY, for Appellee the Courier–Journal, INC.

Before ACREE, Chief Judge; MOORE, Judge; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

This is an appeal from an award of attorneys' fees and costs to prevailing parties in an action brought under the Kentucky Open Records Act. The sole issue presented for our consideration is whether the circuit court erred in finding that the Cabinet for Health and Family Services had "willfully withheld" requested records in violation of the Act. After our review, we affirm.

## Background and Procedural History

On June 3, 2009, Lexington Herald–Leader reporter Bill Estep submitted a request to the Cabinet under the Open Records Act for records relating to Kayden Branham (also known as Kayden Daniels) and Alisha Branham. Kayden was a 20–month–old Wayne County toddler who died after drinking a drain cleaner called "Liquid Fire," a product often used in the production of methamphetamine. Although the Cabinet asserts that the child was not actually in state custody at the time of his death, it is apparent that both he and Alisha, the child's 14–year–old mother, had been placed under investigation for neglect prior to the child's death. The Cabinet believed that Alisha and Kayden were residing in the home of Alisha's mother, but the two had apparently been living with the child's father in a trailer that was being used as a methamphetamine lab.

In a letter written on June 5, 2009, the Cabinet denied Estep's request, claiming that the requested records were uniformly exempt from disclosure under various state and federal laws, including the confidentiality provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Open Records Act's personal privacy exemption (KRS 61.878(1)(a)), the Act's exemption for records or information prohibited from disclosure by state or federal law (KRS 61.878(1)(k) and (l)), and other statutes that generally provide for the confidentiality of the Cabinet's child abuse investigation records (KRS 194A.060, KRS 620.050(5)). The Herald–Leader appealed the Cabinet's denial to the Attorney General pursuant to KRS 61.880(2), and on September 11, 2009, the Attorney General issued Open Records Decision 09–ORD–149, which determined that the Cabinet's actions had not violated the Open Records Act.

The Attorney General determined that the Cabinet had properly withheld the requested information pursuant to KRS 61.878(1)(l). That provision exempts from inspection "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly[.]" The Attorney General found that the exemption applied in this case in light of KRS 194A.060(1), which generally "protect[s] the confidential nature of all records and reports of the cabinet that directly or indirectly identify a client or patient

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes ("KRS") 21.580.

or former client or patient of the cabinet[,]"[2] and KRS 620.050(5), which limits the individuals to whom a "report of suspected child abuse, neglect, or dependency and all information obtained by the cabinet or its delegated representative, as a result of an investigation or assessment made pursuant to this chapter" may be disclosed. Because Appellees did not fit within the categories of individuals permitted to review the subject records under KRS 620.050(5),[3] the Attorney General concluded that the Cabinet had not acted improperly in declining to disclose those records.

The Attorney General also rejected the Herald–Leader's contention that KRS 620.050(12)(a) allowed for disclosure in this case. KRS 620.050(12)(a) is an exception to KRS 620.050(5) and provides that "[i]nformation may be publicly disclosed by the cabinet in a case where child abuse or neglect has resulted in a child fatality or near fatality."[4] Although the Attorney General acknowledged that the provision allowed the Cabinet to make public disclosures of information in the case of a child fatality, he concluded that this "provision is permissive rather than mandatory with regard to disclosure, and the Cabinet has reasonable discretion in such matters." The Attorney General continued: "Nothing in KRS 620.050(12)(a) compels disclosure; the provision merely allows mitigation of the underlying confidentiality of the Cabinet's records under specific circumstances." Because of this, the Herald–Leader "was not entitled to inspect records containing information of this nature."[5]

On October 9, 2009, the Herald–Leader appealed from the Attorney General's open records decision to the Franklin Circuit Court. On December 30, 2009, Courier–Journal reporter Deborah Yetter submitted an open records request to the Cabinet for the same records involving Kayden and Alisha Branham. This request was denied for the same reasons provided in the denial of the Herald–Leader's request. Rather than appeal the denial to the Attorney General, the Courier–Journal moved to intervene in the Franklin Circuit Court action. The circuit court granted the motion.[6]

**2.** We note that the statute contains an exception in instances where "[d]isclosure may be permitted under state or federal law." KRS 194A.060(1)(b).

**3.** Appellees do not dispute this fact.

**4.** The exception was enacted to comply with the federal Child Abuse Prevention and Treatment Act ("CAPTA"), 42 United States Code (U.S.C.) § 5101 *et seq.*, which provides federal funding and resources to states to assist them in providing child and family protection services. CAPTA mandates that states wishing to receive federal funds for such services must submit a compliance plan that includes:
an assurance in the form of a certification by the Governor of the State that the State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes ... provisions which allow for public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality[.]
42 U.S.C. § 5106a(b)(2)(B)(x).

**5.** In reaching this decision, the Attorney General also relied upon 07–ORD–145, an Open Records Decision that reached a similar conclusion on essentially the same grounds. In that case, the Cabinet contended that use of the word "may," as opposed to "shall," in KRS 620.050(12)(a) evidenced a legislative intent that the Cabinet retain "discretion regarding whether to release child fatality and near fatality information."

**6.** Such intervention is permitted by KRS 61.882(2), which provides that "[a] person alleging a violation of the provisions of KRS 61.870 to 61.884 shall not have to exhaust his remedies under KRS 61.880 before filing suit in a Circuit Court."

The parties subsequently filed competing motions for summary judgment. The Cabinet again asserted that disclosure of the requested records was prohibited by HIPAA, KRS 61.878(1), KRS 194A.060, and KRS 620.050(5). In response, Appellees again claimed that the Cabinet had the authority to produce the records under the exception set forth in KRS 620.050(12)(a) and, therefore, should have done so.

Notably, in its motion for summary judgment, the Cabinet acknowledged that it had a blanket policy of not releasing the requested information to the public under any circumstances despite the exception provided in KRS 620.050(12)(a):

The Cabinet has a long-standing decision not to disclose those records so as to allow the victim and the affected family to be spared from unwarranted scrutiny and an unwarranted invasion of their privacy[.]

\* \* \*

In order that the Cabinet might protect the privacy interests of its clients, specifically, children who have died or had near death experiences and their families, the Cabinet has elected to deny requesters access to these records. *In fact, upon information and belief, the Cabinet has never released the individual child fatality reports to the public as Estep and the Courier are requesting the Court to require in this case. Since the statute at issue in this case is discretionary and not mandatory, and since the Cabinet has not abused its discretion and has elected not to release the requested records under any cir-*cumstances *to the public,* the Cabinet should not now be required to provide such private and confidential data to the public and subject its clients to the scrutiny of the public eye following these difficult and often private times.[7]

(Emphasis added). Thus, although the Cabinet conceded that it had the discretion to disclose the records sought by Appellees, it declined to do so in accordance with a general agency policy against such disclosures. Appellees responded by arguing that this blanket policy of denial stood in violation of the Open Records Act and KRS 620.050(12)(a), as well as the federal act that led Kentucky to enact the latter provision.[8]

In an extensive Opinion and Order entered on May 3, 2010, the circuit court found that the Cabinet was obligated to disclose the records requested by Appellees and that the Cabinet had violated the Open Records Act by failing to do so. Although the court provided a number of grounds for its decision, it most notably determined that none of the state laws relied upon by the Cabinet forbade disclosure of the records in this case because KRS 620.050(12)(a) gave the Cabinet the statutory authority to publicly divulge information in cases of child abuse and neglect fatalities. Therefore, such information was not exempt from disclosure under the Act and instead should be subject to public inspection.

Regarding the Cabinet's blanket policy of denying all requests for the types of records sought by Appellees, the circuit court observed that "the Cabinet has ignored the explicit authorization for public clients from scrutiny by the public eye into their private affairs."

---

7. The Cabinet reiterated this position in its response to Appellees' motions for summary judgment: "KRS 620.050 is clear that the Cabinet 'may' disclose the records. The Cabinet has chosen not to disclose these records to the public, however, in an effort to protect its

8. This act will be discussed in further detail below.

disclosure of these records set forth in KRS 620.050(12)(a)" and that the provision "cannot be construed, as it has been by both the Attorney General and the Cabinet, as granting unlimited discretion to the Cabinet to keep these records confidential." Elaborating on this point, the court further remarked:

> The Cabinet has argued that KRS 620.050(12) *permits,* but does not *require,* public disclosure, and thus the Court should defer to the administrative discretion of the agency. Yet, the Cabinet also candidly admits that it *never* authorizes public disclosure of the requested information, even in cases resulting in the death of a child who is in foster care.... Accordingly, there is no question that these records were willfully withheld, although it is also clear that the Cabinet believes such a policy of intentional withholding of these documents is legally justified.
>
> The Cabinet's arguments demonstrate not the exercise of administrative discretion, but the wholesale abdication of discretion. All requests are simply denied, regardless of the circumstances, and notwithstanding the specific mandates of state and federal law that allow the public release of this information.

The circuit court reserved ruling on the issue of whether attorneys' fees and costs should be awarded to Appellees pursuant to KRS 61.882(5) and permitted the parties to further brief the issue. KRS 61.882(5) provides, in relevant part, that "[a]ny person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action." Thus, the key inquiry in determining whether an award of attor-

neys' fees and costs is warranted under the Open Records Act is whether the records were "willfully withheld" in violation of the Act.

Following briefing, the circuit court rendered an opinion and order on September 29, 2010, awarding Appellees attorneys' fees and costs but declining to award any statutory penalties. The court focused its analysis on the Cabinet's "blanket policy of nondisclosure," and as to the question of whether the Cabinet had "willfully withheld" the requested records in violation of the Act, the court determined as follows:

> In the instant case, the Cabinet's actions denying public disclosure of records of [Kayden's] death clearly constitutes a willful violation of the Kentucky Open Records Act. The Cabinet, in fact, instituted a blanket policy of never disclosing child fatality records. The Cabinet declared that "the Cabinet has never released the individual child fatality reports to the public...." (Cabinet Mem. Sup. M.S.J. p. 12). Thus, the denial of this records request was not an accident. Rather, it was the expression of a very intentional policy of the Cabinet, as opposed to some mere negligence or bureaucratic oversight.
>
> This undeviating policy of blanket denial of such requests directly conflicts with the plain language of the exception to KRS 620.050 for fatalities and near fatalities in KRS 620.050(12)(a). Such a blanket policy of denial is wholly incompatible with the purpose, intent, and plain language of the Kentucky Open Records Act.

(Footnote omitted).

In reaching this decision, the circuit court also directly addressed the Cabinet's assertion that the decision of the Supreme Court of Kentucky in *Bowling v. Lexington–Fayette Urban County Gov't,* 172 S.W.3d 333 (Ky.2005), and the decision of

this Court in *Shyamashree Sinha, M.D. v. Univ. of Kentucky,* 284 S.W.3d 159 (Ky. App.2008), required a finding of bad faith before the circuit court could award attorneys' fees and costs under KRS 61.882(5). The circuit court determined that the Cabinet "cannot be in good faith compliance with the Kentucky Open Records Act when its actions prevent disclosure of a class of cases where a clearly governing statute, in this case KRS 620.050(12)(a), allows for disclosure." The court then made a "specific factual finding" that the denial of Appellees' open records requests was "willful, as that term is used in KRS 61.882(5)" and that Appellees were consequently entitled to an award of attorneys' fees and costs.[9]

On October 12, 2010, the Cabinet moved to alter, amend, or vacate the circuit court's award of attorneys' fees and costs, arguing that the claimed attorneys' rates and hours were excessive and that the court erred in awarding fees and costs at all. The Cabinet particularly contended that an award of attorneys' fees and costs required a finding of bad faith on the agency's part pursuant to *Bowling, supra,* and that the court had failed to follow this standard.

On November 1, 2010, the circuit court partially granted the Cabinet's motion by adjusting the amount of fees awarded to the Courier–Journal due to a mathematical error. However, the court reiterated its finding that the Cabinet had "willfully withheld" the requested records in violation of the Open Records Act and that an award of attorneys' fees and costs was consequently merited. In denying this portion of the Cabinet's motion, the circuit court expressed skepticism that *Bowling* actually required a finding of bad faith in all open records cases before attorneys' fees and costs could be awarded. Howev-

er, despite this skepticism, the court noted that in contrast to this case, the agency in *Bowling* had "never made a blanket denial of the records requests[.]" Because of this policy, the court affirmed that it *had* found that the Cabinet had acted in bad faith by willfully withholding the requested records:

> And finally, the Court finds that the Cabinet's policy of blanket denial of Open Records requests in cases of this nature constitutes a willful violation of the Act. The blanket denial policy of the Cabinet here, in contrast to the LFUCG policy of case-by-case review [in *Bowling* ], constitutes bad faith under the Act. To the extent that the Cabinet maintained the policy of blanket denials, that policy constitutes "bad faith" as that term is used in the *Bowling* decision, notwithstanding the Attorney General's ratification of this illegal policy.

This appeal followed.

## Standard of Review

As an initial matter, we note that this appeal concerns *only* the circuit court's award of attorneys' fees and costs under KRS 61.882(5) and whether the evidence supports the court's finding that the Cabinet had "willfully withheld" the records requested by Appellees. The Cabinet does not challenge the circuit court's determination that it was obligated under the Act to disclose the records requested by Appellees and that it had violated the Open Records Act by failing to do so. Therefore, that aspect of the circuit court's determination is not subject to our review, and we assume—for purposes of this appeal only—that that particular question was decided correctly.

---

9. The circuit court declined to assess any stat-    utory penalties.

As noted above, KRS 61.882(5) gives a circuit court the discretion to award a prevailing party reasonable attorneys' fees and costs upon a finding that a public agency "willfully withheld" records in violation of the Open Records Act. The circuit court's "decision on the issue of willfulness is a finding of fact and, as such, will not be disturbed unless clearly erroneous." *Bowling*, 172 S.W.3d at 343–44; *see also Sinha*, 284 S.W.3d at 162; Kentucky Rules of Civil Procedure ("CR") 52.01. A finding of fact is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.App.2003).

The Cabinet argues that our standard of review should instead be *de novo* because the circuit court allegedly misinterpreted KRS 61.882(5). Specifically, the Cabinet contends that the court failed to give effect to the word "willfully" as it is used in that section and effectively found the Cabinet to be strictly liable for fees and costs merely because Appellees were successful in their appeal. The Cabinet argues that the circuit court erroneously failed to consider the additional—and necessary—question of whether the Cabinet's conduct was in bad faith.

We agree with the Cabinet that portions of the circuit court's orders in this matter suggest doubt that a finding of bad faith is required before a court may award attorneys' fees and costs to a party who successfully challenges an agency's refusal to provide records requested under the Open Records Act. However, the Supreme Court's view on this issue is quite clear: "A public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act.... *In other words, a technical violation of the Act is not enough; the existence of bad faith is required.*" *Bowling*, 172 S.W.3d at 343 (internal citations omitted) (emphasis added); *see also Sinha*, 284 S.W.3d at 162 ("In order to show that the University's actions were willful, Sinha was required to show that the University acted in bad faith with an intent to violate the Open Records Act and without plausible explanation for the alleged errors."); *Lang v. Sapp*, 71 S.W.3d 133, 135–36 (Ky.App.2002). In other words, simply succeeding against an agency in an open records action is not enough to merit an award of attorneys' fees and costs; an additional showing that the agency refused to provide the records was in bad faith is required.

Thus, to the extent the circuit court orders reflect a belief that a finding of bad faith is not always required and that fees or costs may be awarded in *any* instance where an agency is found to have violated the Act, we explicitly reject that misconception herein. However, despite some ambivalence on this point, the circuit court nonetheless found that the Cabinet *had* acted in bad faith by denying Appellees' records requests. Thus, while certain aspects of the court's orders suggest that a party is entitled to an award of attorneys' fees and costs merely by succeeding in an open records action, those orders ultimately demonstrate the court's belief that the Cabinet had acted in bad faith. Therefore, we focus our inquiry solely on the question of whether the court's finding of bad faith was clearly erroneous.

### Analysis

The Cabinet argues that the circuit court erred in awarding attorneys' fees

and costs in this case because the record fails to support a determination that it acted in bad faith in failing to disclose the subject records. The Cabinet maintains that it could not have acted in bad faith in this matter because it reasonably relied upon open records decisions of the Attorney General for its stance of nondisclosure. In response, Appellees argue that the Cabinet's admitted policy of blanket nondisclosure removes this case from the realm of cases where a public agency relies, in good faith, upon an exemption from disclosure that is later determined to be incorrect. The circuit court agreed with the latter correct position.

■ The Kentucky Open Records Act, KRS 61.870 *et seq.,* governs the public's right to inspect and to copy records held by agencies of the Commonwealth. As a general rule, the Act encourages disclosure by requiring that "[a]ll public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884[.]" KRS 61.872(1). The Act further provides that its "basic policy" is that "free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.871. Because of this presumption favoring open disclosure, the agency opposing disclosure has the burden of establishing that a record sought is exempt from release. *Medley v. Bd. of Educ., Shelby County,* 168 S.W.3d 398, 402 (Ky.App. 2004).

■ In light of these principles, the Cabinet's assertion of a blanket policy of nondisclosure plainly contradicts the Act's preference for open disclosure and in no way satisfies the Cabinet's burden of justifying an exemption from that policy. *See*

KRS 61.871; KRS 61.882(3); *cf. O'Neill, Lysaght & Sun v. Drug Enforcement Admin.,* 951 F.Supp. 1413, 1419 (C.D.Cal. 1996). The Cabinet admitted before the circuit court that KRS 620.050(12)(a) granted it the discretion to disclose the information requested by Appellees, yet it declined to do so not only in this case but in *all* similar cases as a matter of policy, regardless of circumstances of each case. Notably, the Cabinet makes little mention of its blanket policy in its briefs, which is understandable since such a policy plainly conflicts with the Act and arguably with CAPTA. *See* 42 U.S.C. § 5106a(b)(2)(B)(x).

Although the Cabinet relied upon opinions from the Attorney General for its policy, those opinions reflect a view that the Cabinet had "reasonable discretion" in considering whether to disclose the information sought by Appellees in light of KRS 620.050(12)(a). The circuit court was correct that by adopting a blanket policy of nondisclosure, the Cabinet pushed reliance upon those opinions beyond its reasonable bounds and demonstrated "not the exercise of administrative discretion, but the wholesale abdication of discretion."

We agree with the circuit court that the Cabinet's failure to disclose the requested records in this case constituted a "willful" violation of the Open Records Act. Had the Cabinet considered Appellees' requests on their merits and denied disclosure upon a reasonable basis, perhaps our opinion would be different. However, it is apparent that the Cabinet failed to make particularized analysis and instead relied on an all-encompassing policy of nondisclosure despite the purpose of the Act and despite the acknowledged applicability of KRS 620.050(12)(a) under these circumstances. The circuit court concluded that these denials were made in "bad faith," and we see

no grounds to disagree with that conclusion.[10]

In light of our decision, and per Appellees' request, we remand this matter to the circuit court for a supplemental award of attorneys' fees and costs incurred on appeal. Under KRS 61.882(5), upon a showing of a willful withholding, Appellees are entitled to any fees and costs "incurred in connection with the legal action," which would necessarily include fees and costs incurred in defending the judgment on appeal. Since Appellees have requested a determination on this issue, remand is appropriate. *See Moorhead v. Dodd,* 265 S.W.3d 201, 205 n. 1 (Ky.2008).

## Conclusion

For the foregoing reasons, the decision of the Franklin Circuit Court is affirmed, and this matter is remanded for further proceedings consistent with this opinion.

ALL CONCUR.

10. Indeed, the willfulness of the Cabinet's wholesale denial of Appellee's requests is underscored by the fact that it initially refused to produce even those records that it eventually acknowledged were not excluded from exemption. *See* KRS 61.878(4).