RENDERED: AUGUST 25, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1033-MR

CAMPBELL COUNTY BOARD OF
EDUCATION                                                               APPELLANT

|       | APPEAL FROM CAMPBELL CIRCUIT COURT |
| :---- | :--------------------------------- |
| v.    | HONORABLE JULIE REINHARDT WARD, JUDGE |
|       | ACTION NO. 21-CI-00762             |

KEN MOELLMAN, SR. AND NOAH
HEIM                                                                     APPELLEES

OPINION
AFFIRMING IN PART AND REVERSING IN PART

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

EASTON, JUDGE: The Appellant, Campbell County Board of Education

("Board"), appeals the Campbell Circuit Court's Order granting summary

judgment in favor of the Appellee, Ken Moellman, Sr. ("Moellman"). The circuit

court determined the Board violated Kentucky's Open Meetings Act[1] at four school board meetings in August and September of 2021 by requiring that all in-person attendees wear a mask or other facial covering.[2] The circuit court further found the violation of the Open Meetings Act at the school board meeting on September 20, 2021, to be "willful" and awarded attorney fees and costs to Moellman. Finally, the circuit court voided all actions taken at the four school board meetings. Having reviewed the record and the applicable law, we affirm the finding of the violations but reverse the sanctions imposed in addition to the statutory fines.

**FACTUAL AND PROCEDURAL HISTORY**

Moellman and Noah Heim ("Heim") filed suit in the Campbell Circuit Court on September 28, 2021, alleging the Board violated Kentucky's Open Meetings Act at six school board meetings in August and September of 2021, specifically, the meetings on August 9, August 16, August 18, August 20, September 9, and September 20.

A short recitation of the history of the Board's COVID-19 responses is appropriate. In July 2020, the Board enacted a COVID-19 Operation Plan at its regular school board meeting. Included in this plan was a requirement for students

---

[1] Kentucky Revised Statutes ("KRS") 61.800-61.850.

[2] For simplicity, we will refer to "masks" to include alternative facial coverings.

and staff to wear masks while inside the school building. For some time after the start of the COVID-19 emergency in March 2020, the Board held their meetings via videoconference, pursuant to KRS 61.826.[3]

At some point, the Board resumed in-person meetings, but the testimony reveals masks were required at all in-person Board meetings. Either the Board met via videoconference prior to the first challenged meeting of August 9, 2021, or Moellman did not specifically challenge the mask requirement prior to that date. Once in-person meetings resumed, the Board also spread out the chairs to maintain six feet or more between individuals or families at the meeting, provided hand sanitizer, and disinfected the rooms prior to and after the Board meetings. Apparently, Moellman had no objection to these non-mask measures.

In the Complaint, Moellman alleged he attempted to attend each of the challenged school board meetings in person, but he was denied entry because he refused to wear a mask. Heim alleged he was able to attend the meetings because he wore a mask to obtain access to the meetings, but he removed his mask once he had gained that access.[4]

---

[3] The General Assembly has allowed remote attendance for open meetings since 1994.

[4] Because the circuit court determined Heim was not denied access, we need not discuss his participation further in the resolution of this appeal.

-3-

On September 21, 2021, counsel for Moellman sent a written Complaint to the Board, pursuant to KRS 61.846(1). Moellman alleged the Board's mask requirement was an impermissible condition of attendance, which was a violation of KRS 61.840's prohibition against imposing conditions "other than those required for the maintenance of order[.]" The Complaint demanded the Board rescind the mask requirement, redo any actions taken at those meetings, and issue an apology.

The Board responded on September 24, 2021, and denied the mask mandate was a violation. The Board argued the mask requirement was to maintain order, and that the Board had followed the various executive orders, court orders, regulations, and the school's operational plan that had been in place. The Board also included information that the meetings could be viewed via live-stream. The Board declined to take any further action.

Upon receipt of the Board's response, Moellman immediately filed suit. The suit initially named the Board, the superintendent in his official capacity, and each individual Board member in his or her official capacity. All individuals in their official capacities were later dismissed as parties. Discovery then proceeded in the form of depositions.

Moellman filed a Motion for Summary Judgment on February 11, 2022. The Board filed a Response on March 7, 2022, which alternately requested

summary judgment in its favor. The circuit court heard arguments on May 5, 2022. During this hearing, the court reviewed the timeline of the various executive orders, state and federal lawsuit injunctions, and regulations regarding mask mandates that were in place during the time of the applicable school board meetings. This timeline will be discussed further as it is relevant to our analysis of the willfulness of the claimed violations.

The circuit court entered an Order on May 25, 2022. The circuit court held the Board violated the Open Meetings Act at four of the meetings in question. The circuit court decided that during the meetings on August 16 and 18, 2021, there was a valid executive order in place requiring masks to be worn in schools, and therefore the Board was not in violation of the Open Meetings Act for those two meetings. The circuit court determined that, for the remaining meeting dates, there was no legal justification for requiring masks at the meetings.

The circuit court concluded masks were not necessary for the maintenance of order at the meetings, and therefore the mask mandate was a violation of KRS 61.840. The circuit court granted summary judgment to Moellman as to the remaining four meetings. The circuit court granted the statutory $100[5] fine per meeting ($400 total) to Moellman, to be paid by the Board.

---

[5] KRS 61.848(6) permits a fine of up to $100 for each violation of the Open Meetings Act. While the statute would have permitted a lower fine for the violations in question, the circuit court was within its discretion to award the maximum of $100.

-5-

The circuit court additionally voided all actions taken by the Board during the four meetings. The circuit court also found the Board's violation at the September 20 meeting to be "willful" and awarded costs, including attorney fees, to Moellman. The circuit court stated: "[T]his order shall not be final until the court makes a final ruling on attorneys' fees."[6] On July 26, 2022, the circuit court entered an Order granting attorney fees and costs totaling $16,456.70. This Order made the circuit court's May 25 Order final and appealable. This appeal followed.

## STANDARD OF REVIEW

"Open Records Act and Open Meetings Act determinations are reviewed by this Court de novo." *Webster Cnty. Bd. of Educ. v. Franklin*, 392 S.W.3d 431, 434-35 (Ky. App. 2013). "The trial court's decision on the issue of willfulness is a finding of fact and, as such, will not be disturbed unless clearly erroneous." *Bowling v. Lexington-Fayette Urb. Cnty. Gov't*, 172 S.W.3d 333, 343-44 (Ky. 2005). "[C]learly erroneous means not supported by substantial evidence. 'Substantial evidence' is evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable persons." *Hughes v. Kentucky Horse Racing Authority*, 179 S.W.3d 865, 871 (Ky. App. 2004) (citations omitted).

---

[6] Circuit Court Order of May 25, 2022.

**ANALYSIS**

The Board makes several arguments. First, it argues the circuit court's order should be reversed in totality because the mask policy was to maintain order at the school board meetings and thus permissible under KRS 61.840. In the alternative, the Board argues that even if the mask requirement was an impermissible condition of attendance, it was not a willful violation, and therefore the award of attorney fees and costs should be reversed. Finally, the Board argues it was clear error for the circuit court to void actions taken at the meetings, because the applicable statute does not authorize such a remedy for the type of violation alleged. We note that the Kentucky School Boards Association ("KSBA") filed an *amicus curiae* brief in this action, solely supporting the Board's final argument.

"[T]he formation of public policy is public business and shall not be conducted in secret[.]" KRS 61.800. The foundation for open meetings laws is the right of the public to observe governmental decision making. This fosters transparency and accountability. The purpose of open meetings laws is to provide a window, not a weapon for political sparring.

It is undisputed that the Board qualifies as a "public agency" pursuant to KRS 61.805, and it therefore must abide by the Open Meetings Act. The Board does not argue that the four meetings in question were entitled to any exemptions

listed in KRS 61.810. This is not a case where the Board had closed meetings or conducted public business in a closed session. The allegation in this case is that the Board, by requiring a mask to attend the meetings, enforced an improper condition of attendance.

## A MASK WAS NOT REQUIRED TO MAINTAIN ORDER

KRS 61.840 states:

> No condition other than those required for the maintenance of order shall apply to the attendance of any member of the public at any meeting of a public agency. No person may be required to identify himself in order to attend any such meeting. All agencies shall provide meeting room conditions, including adequate space, seating, and acoustics, which insofar as is feasible allow effective public observation of the public meetings. All agencies shall permit news media coverage, including but not limited to recording and broadcasting.

The Board argues that the mask mandate was acceptable to "maintain order." The first question we must answer is whether the Board's mask mandate was a prohibited condition of attendance at the school board meetings or a permissible requirement to maintain order.

There is no Kentucky case law precedent regarding what is considered an appropriate condition to maintain order versus a requirement that is prohibited by the statute. Pursuant to KRS 61.846(2), a citizen may request the Attorney General of Kentucky ("Attorney General") to review a public agency's denial. The Attorney General may express opinions on the law and has done so.

-8-

The Attorney General has recognized that "KRS 61.840 vests members of the public with a virtually unconditional right to attend all meetings of a public agency." *In re:  Ralph Priddy/Mayfield City Council*, Ky. Op. Att'y Gen. 08-OMD-249, 2008 WL 5172066, at *3 (Nov. 21, 2008).  Known violations have included a public agency requiring a member of the public to sit, rather than stand in the back of the room (08-OMD-218),[7] not allowing recording of a public meeting (96-OMD-143),[8] allowing recording only within a designated area (11-OMD-138),[9] residency in the city or county served by the public agency (98-OMD-44),[10] and mandatory sign-in sheets (00-OMD-63).[11]

While no opinions of the Attorney General regarding masks at meetings during a pandemic existed at the time of the commencement of this lawsuit, such guidance exists now.  In 22-OMD-258,[12] the Attorney General

---

[7] *In re:  Paul R. Hollinger, Sr./Louisville Metro Code Enforcement Board*, Ky. Op. Att'y Gen. 08-OMD-218, 2008 WL 5172063 (Oct. 8, 20008).

[8] *In re:  Bessie Elliott/North Marshall Water District*, Ky. Op. Att'y Gen. 96-OMD-143, 1996 WL 368830 (Jun. 19, 1996).

[9] *In re:  Mignon Colley/Carter County Fiscal Court*, Ky. Op. Att'y Gen. 11-OMD-138, 2011 WL 4047886 (Sep. 8, 2011).

[10] *In re:  Christie Arlinghaus-Clem/City of Crescent Springs*, Ky. Op. Att'y Gen. 98-OMD-44, 1998 WL 220179 (Apr. 1, 1998).

[11] *In re:  Terry Whittaker/Kenton County Fiscal Court*, Ky. Op. Att'y Gen. 00-OMD-63, 2000 WL 35448318 (Feb. 21, 2000).

[12] *In re:  Kurt Wallace/Jefferson County Board of Education*, Ky. Op. Att'y Gen. 22 OMD-258, 2022 WL 17742428 (Dec. 5 2022).

opined that a mask mandate for a public meeting, while it may be intended for maintaining public health, is not required for maintaining order. This opinion had the benefit of many months after the fall of 2021 to evaluate the present need for masks to maintain order.

The constitutionally independent judicial branch of Kentucky government is not bound by the Attorney General's opinion. "While not binding on courts, Opinions of the Attorney General are considered highly persuasive and have been accorded great weight." *Carter v. Smith*, 366 S.W.3d 414, 420 n.2 (Ky. 2012) (citing *Palmer v. Driggers*, 60 S.W.3d 591, 596 (Ky. App. 2001)).

With the checks and balances of our constitutional government, we must independently decide if a mandatory mask mandate was required to maintain order at the school board meetings. It is doubtful that the General Assembly would have had cause to consider the impacts of a pandemic when enacting the Open Meetings Act. Maintaining public health generally would not have been the policy addressed by an open meetings law. The importance of avoiding spread of disease was in the realm of other laws. We see the interaction of these two policies here. The public health was regulated through the competing executive and court orders and legislative actions. For this reason, we excuse, as did the circuit court, any issue with the order provision of the open meetings law for those meetings during which a public health provision governed.

Once the public health provision no longer applied, we must consider only the authority of the Open Meetings Act to maintain order. We then conclude the circuit court did not err in its legal conclusion that the Board violated the Open Meetings Act by making a mask a condition of attending the in-person meetings on those occasions when there was no separate legal basis for doing so. We will discuss the question of maintaining order further in the following assessment of the willfulness of any violation.

**THE VIOLATION ON SEPTEMBER 20, 2021, WAS NOT "WILLFUL"**

It is at this point where the timeline of executive orders, court orders, and regulations becomes particularly significant. The COVID-19 pandemic led to an eruption of fighting among executive branch officials and between the executive and legislative branches in Kentucky. Both state and federal courts were drawn into the fray. The precise timing of the various acts and decisions is relevant not just to determine actual violations but the good or bad faith of such violations.

Moellman alleged the Board violated the Open Meetings Act at six meetings, but the circuit court found a violation at only four meetings. The circuit court found that valid executive orders existed on August 16 and 18, 2021, and therefore the Board had the required separate legal authority to mandate that masks be worn at those meetings. Similarly, the circuit court assessed what authority the

-11-

Board had for a mask mandate and found none for the other four meetings. We should review the somewhat tortuous and litigious history.

In March 2020, the first cases of COVID-19 were discovered in Kentucky, and in response, Governor Beshear declared a state of emergency. He issued executive orders. Governor Beshear issued Executive Order 2020-243 on March 13, 2020, which suspended parts of the Open Meetings Act. The Kentucky Supreme Court issued its opinion in *Beshear v. Acree*, 615 S.W.3d 780 (Ky. 2020) on November 12, 2020. The Court ruled the governor had the right to issue such an executive order, because the General Assembly had properly delegated emergency powers to the governor pursuant to KRS Chapter 39A. *Beshear*, 615 S.W.3d at 810-15. Kentucky's governors thankfully had not had occasion to utilize this chapter for a pandemic. The Court ruled the General Assembly was within its rights to delegate that authority to the governor. *Id.*

In February 2021, during its regular session, the Kentucky Senate enacted Senate Bill 1, which limited the authority granted to the governor under KRS Chapter 39A. One provision of this legislation was to limit effective dates of executive orders of the governor to thirty days unless an extension is granted by the General Assembly. It additionally prohibited the governor from issuing a new executive order relating to the same emergency without the approval of the General Assembly.

In response, Governor Beshear and Eric Friedlander, in his official capacity as the Secretary of the Cabinet for Health and Family Services ("CHFS"), filed a declaratory action in the Franklin Circuit Court on February 2, 2021, asking that court to find the newly enacted legislation unconstitutional as infringing constitutionally separate executive powers. After a hearing, the Franklin Circuit Court entered an injunction, temporarily enjoining the legislation from taking effect. This Order was entered on March 3, 2021.

On March 29, 2021, the General Assembly passed House Joint Resolution 77 ("HJR 77"), over Governor Beshear's veto. This had the effect of eliminating all executive orders not specifically ratified by HJR 77. Section 4(2) states: "As of the effective date of this Act, Executive Order 2020-243 [addressing open meetings provisions] is otherwise of no further force or effect, and any statutes or regulations therein suspended are no longer suspended." On April 7, 2021, the Franklin Circuit Court, on motion by Governor Beshear and the Secretary of CHFS, amended the injunction to include HJR 77. Because of the injunction, Governor Beshear's executive orders remained in effect.

On June 11, 2021, Governor Beshear rescinded the state's mask mandate, with certain exceptions, in Executive Order 2021-386. But then on August 10, 2021, Governor Beshear issued Executive Order 2021-585, which

required masks for all individuals over the age of two in a childcare or school setting.

On August 21, 2021, the Kentucky Supreme Court issued its opinion in *Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021), which reversed the Franklin Circuit Court's injunction of the legislation enacted in February and March 2021. On August 23, 2021, Governor Beshear rescinded Executive Order 2021-585 in response to the Supreme Court's ruling.

Prior to these court developments, on August 12, 2021, the Kentucky Board of Education's Administrative Regulation 702 KAR 1:195E went into effect. This regulation required that "[a]ll individuals, including students, school employees, contractors, and visitors, shall cover their nose and mouth with a face covering while inside a school facility." *Id.* However, the General Assembly invalidated this regulation on September 9, 2021, with Special Session Senate Bill 1. Clearly indicating a preference for local decision making, this Bill required school districts to implement their own COVID-19 operational plan. According to the testimony of Superintendent Rust, he created a plan and published it on September 14, 2021. The ratification of this plan was on the Board's agenda for the September 20, 2021, meeting.

It is against this long history the circuit court found the Board had violated the Open Meetings Act on August 9, August 30, September 9, and

-14-

September 20.  We agree with the circuit court's finding that there was no valid order or regulation in place at the exact time of these meetings which would support the Board's mask mandate, which otherwise violated KRS 61.840.

The Board had another avenue to argue the meeting of September 20 did not violate the Open Meetings Act.  Again, KRS 61.826 allows meetings to be by videoconference.  There was testimony that all the Board's regular scheduled meetings were "live-streamed," a type of videoconference.  The August 9, August 30, and September 9 meetings were not regular meetings, so they were not live-streamed, according to the testimony.  However, there were two meetings which took place on September 20, one being a regular Board meeting that was live-streamed.  Moellman could have remotely observed that meeting.

The second meeting on September 20 was a special meeting of a different entity; this meeting was not live-streamed.  In two separate depositions, it is stated by the Board's counsel that this special meeting was not a meeting of the Board but rather a meeting of the Finance Corporation, which is a separate, although related, entity from the Board.  The exhibits to the depositions confirm a meeting of the Finance Corporation.  This agency is not a party to this case.

The second argument of the Board is that even if the mask mandate was a violation of the Open Meetings Act, it was not a willful violation pursuant to KRS 61.848(6).  The circuit court found that the mask requirement at the

September 20 meeting constituted a "willful violation" and awarded attorney fees and costs to Moellman. The circuit court stated there were no executive orders, regulations, or injunctions in place for this meeting. Additionally, the circuit court reasoned that because the Board was discussing the school's COVID-19 protocol at the September 20 meeting, the mask mandate was excluding those individuals most likely to oppose certain portions of the proposed plan, although they could have observed remotely.

Whether a violation is "willful" is a question of fact. *Shyamashree Sinha, M.D. v. Univ. of Kentucky*, 284 S.W.3d 159, 162 (Ky. App. 2008), but we must apply the legal standard of willfulness to the circumstances which the circuit court found. To show that the Board's actions were willful, Moellman was required to show that the Board acted in bad faith with an intent to violate the Open Meetings Act and without plausible explanation for its alleged errors. *Id.* On this record, we cannot conclude the Board acted in bad faith or with the specific intent to violate the law.

"A public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act. In other words, a technical violation of the Act is not enough; the existence of bad faith is required." *Bowling*, 172 S.W.3d at 343 (citation omitted). While these cases refer to the Open Records

Act rather than the Open Meetings Act, the statutes covering these Acts mirror one another, and the analysis is the same.

The Board had several good faith reasons to believe it had the authority to mandate masks at its meetings. First, it operated on a belief, albeit an ultimately erroneous one, that masks would maintain order in the sense it was for the protection of public health. The Board also had its own local COVID-19 policy, created over a year earlier, which mandated mask wearing in schools.

The circuit court observed the idea of mask wearing as preventing disorderly conduct was a "stretch." But, as school boards in America struggled with mask policies when schools restarted in the fall of 2021, violent disruption of meetings occurred throughout our country as both opponents and proponents of mask mandates attended in-person school board meetings. *See, e.g.*, Staff Report, *Disrupted Florida School Board Meetings Now Common in the Age of COVID and Mask Debates*, Ocala Star Banner (Feb. 25, 2022, 8:42 AM), https://www.ocala.com/story/news/education/2022/02/25/school-board-florida-parental-choice-mandatory-covid-mask-mandates/6922775001/ (explaining the Florida experience alone). The flaw in the Board's argument on this point is the misplaced belief that requiring everyone to wear a mask at a Board meeting would prevent disorderly conduct during the meeting. A school board may have chosen to have everyone wear masks, no one wear masks, or allow a personal choice of wearing a mask or

-17-

not.  The experiences elsewhere in the fall of 2021 teach us that disorderly behavior started by both sides of the debate would occur regardless of masks worn at the meeting.

Superintendent Rust testified he created a COVID-19 mitigation plan in compliance with the General Assembly's direction in Special Session Senate Bill 1.  In other words, the General Assembly had directed school boards to figure out their own local options, and the Board was trying to do that.  There had been a flurry of competing executive orders, regulations, and injunctions from court cases over the previous year and a half regarding a very novel issue that very few living then had experienced before.

In this context, we take the time to specifically consider the circumstances of the September 9 meeting.  While we do not reverse the finding of a violation as to that meeting, we note the meeting occurred on the very day the General Assembly acted to generally invalidate the mask requirement imposed by Administrative Regulation 702 KAR 1:195E.  In Superintendent Rust's deposition, he explained his confusion about the effective date of this change.  He understood there was a period before the change took effect because of the remarkably short timeframe given for the local school boards to create their own plans.  Even

Moellman's counsel was not sure about this, indicating the need to look at that question.[13]

In *Board of Commissioners of City of Danville v. Advocate Communications, Inc.*, 527 S.W.3d 803, 808 (Ky. 2017), the Kentucky Supreme Court determined the Board did not willfully violate the Open Meetings Act when its violation stemmed from "its misconception of the law applicable to bidding at public auction without reserve, than from a willful attempt to violate the Act." A similar misapplication of the law occurred here.

The discussion and vote were held at the regular Board meeting on September 20, which was live-streamed to the public. Therefore, there was another lawfully permitted option available for Moellman and others to observe this meeting. "The public has no right under the Act to participate in discussions during the meeting. The public agency need only ensure that its *members* can be 'seen and heard.' KRS 61.826(2)(b)." *In re: Julie Clay/Perryville City Council*, Ky. Op. Att'y Gen. 21-OMD-096, 2021 WL 2301729 (May 27, 2021). When both in-person and remote options are provided, it may be the choice of the attendee as to which manner of attendance he or she may choose, but, when assessing bad faith, it is debatable when both options were provided at the offending meeting.

---

[13] Rust Deposition at page 17.

KRS 61.826(2) does not require public agencies to ensure that members of the public are seen or heard. The Attorney General has repeatedly explained that the Act does not require public agencies to permit public comments during meetings. *See, e.g.*, *In re: Mary Jo Kustes/Spencer County Elementary School*, Ky. Op. Att'y Gen. 95-OMD-99, 1995 WL 455406 (Jul. 7, 1995); *In re: Norman Case/City of Crittenden*, Ky. Op. Att'y Gen. 19-OMD-135, 2019 WL 3243947 (Jul. 8, 2019). "The Open Meetings Act does not guarantee the right for the public to be able to comment." *In re: Caldwell and Wright/ Board of Education of the Danville Independent Schools*, Ky. Op. Att'y Gen. 18-OMD-060, 2018 WL 1557258 (Mar. 22, 2018). While a live-stream option would not have allowed Moellman to comment, it would have allowed him to view the meeting, which is what the law requires.

Additionally, while Moellman was not required to seek the Attorney General's opinion regarding the legality of the Board's actions prior to filing suit, *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 848 (Ky. 2013), the Board was acting without the assistance of an existing opinion on the question from the Attorney General. This is not a case where the Board ignored an Attorney General opinion advising its actions were in violation of the Open Meetings Act.

Because we cannot agree with the application of the word "willful" as explained by the Kentucky Supreme Court in this context, we reverse the circuit court's finding of a willful violation on the part of the Board. We reverse the order awarding attorney fees and costs.

**VOIDING THE SCHOOL BOARD'S DECISIONS WAS ERRONEOUS**

The Board's final argument is one in which the KSBA joins. Both the Board and the KSBA argue that KRS 61.848(5) does not authorize a court to void actions taken in public meetings which violate KRS 61.840, the statute the Board was found to have violated. We agree this is a correct reading of the statute.

KRS 61.848(5) reads: "Any rule, resolution, regulation, ordinance, or other formal action of a public agency without substantial compliance with the requirements of KRS 61.810, 61.815, 61.820, and KRS 61.823 shall be voidable by a court of competent jurisdiction." "In construing a statute, it is fundamental that our foremost objective is to determine the legislature's intent in enacting the legislation. To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Pearce v. Univ. of Louisville, by & through its Bd. of Trustees*, 448 S.W.3d 746, 749 (Ky. 2014) (internal quotation marks omitted) (quoting *Richardson v. Louisville/Jefferson County Metro Government*, 260 S.W.3d 777, 779 (Ky. 2008)).

Moellman points to no case where the voiding of actions was upheld when there was a violation of KRS 61.840. Nor could this Court locate such precedent. Only violations of the four listed statutes may lead to voiding the actions taken at those meetings. KRS 61.840 is conspicuously absent from that list. "[W]here the language of a statute clearly restricts its meaning and confines its operation to a single thing or class, other things or persons of other classes not mentioned are thereby excluded . . . ." *Whitlock v. Rowland*, 453 S.W.3d 740, 743-744 (Ky. App. 2015) (citing *Boswell's Ex'x v. Senn's Adm'r*, 219 S.W. 803, 805 (Ky. 1920)). The attempt to implant a violation of KRS 61.840 into KRS 61.810 is not persuasive.

As part of this argument, Moellman's counsel essentially contended the General Assembly just forgot to add KRS 61.840 to the list. The original list contained all the operative provisions of the Open Meetings Act. The argument goes that when KRS 61.840 was added to the Act, it must have been the intention of the General Assembly for any actions taken after any violation of any provision to be voidable. Suffice it to say, the General Assembly simply did not say that and could have said so if that was their intention. We are not free to judicially graft this missing expression of intent into the law.

The circuit court's order of May 25, 2022, specifically references how the Board violated KRS 61.840. KRS 61.840 is clearly the statute violated by the

-22-

Board's actions. KRS 61.810 is entitled "Exceptions to Open Meetings." Cases invoking KRS 61.810 involve improper closed or "executive session" meetings, where all members of the public were excluded. *See Carter*, 366 S.W.3d 414; *Webster County Bd. of Educ. v. Franklin*, 392 S.W.3d 431. This was simply not the case here. Moellman does not allege the Board held any improper closed sessions. His allegations arise out of an unwarranted condition of attendance, that is, the mask mandate. This action undoubtedly falls under KRS 61.840, not 61.810. Because KRS 61.848(5) does not specify that violations of KRS 61.840 are voidable, we reverse the circuit court's order voiding the actions taken at the Board meetings at issue.

## CONCLUSION

For the foregoing reasons, we affirm the Campbell Circuit Court's finding that the Board violated KRS 61.840 regarding the Board meetings held on August 9, 2021; August 30, 2021; September 9, 2021; and September 20, 2021. We reverse the circuit court's award of attorney fees and costs pursuant to KRS 61.848(6) and the voiding of the Board's actions at the meetings at issue pursuant to KRS 61.848(5). The Judgment of the Campbell Circuit Court then permits recovery by Moellman of $400; $100 for each of four violations of KRS 61.840.

ALL CONCUR.

-23-

BRIEF FOR APPELLANT:

Jason V. Reed
Covington, Kentucky

*AMICUS CURIAE* BRIEF FOR
KENTUCKY SCHOOL BOARDS
ASSOCIATION:

R. Johnson Powell
Frankfort, Kentucky

BRIEF FOR APPELLEES:

Christopher Wiest
Crestview Hills, Kentucky

Thomas B. Bruns
Cincinnati, Ohio